HOLLAND & KNIGHT LLP
Jesus E. Cuza (*Pro Hac Vice* Application Forthcoming)
Rebecca J. Canamero (*Pro Hac Vice* Application Forthcoming)
701 Brickell Avenue, 33rd Floor
Miami, FL 33131
Telephone: 305.374.8500
Fax: 305.789.7799
E-mail: jesus.cuza@hklaw.com
        rebecca.canamero@hklaw.com

HOLLAND & KNIGHT LLP
 Robert Barton (SBN 269455)
 John A. Canale (SBN 287287)
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone: 213.896.2400
Fax: 213.896.2450
E-mail: robert.barton@hklaw.com
        john.canale@hklaw.com

Attorneys for Plaintiffs 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, and 2807 JADE 1, LLC

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, and 2807 JADE 1, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> EVAN KAGAN, an individual, and SAFAA IDYOUSS KAGAN, an individual; <br><br> Defendant. | Case No.: 2:20-cv-02630 <br><br> JURY TRIAL DEMANDED <br><br> **COMPLAINT** |

#73711749_v1

COMPLAINT

# COMPLAINT

Plaintiffs 1250916 Ontario Ltd., Belaire Group, LLC, and 2807 Jade 1, LLC (collectively, ("Plaintiffs")) sue Defendants Evan Kagan ("Kagan") and Safaa Idyouss Kagan ("Safaa") (collectively "Defendants") for stealing, converting, and misappropriating millions of dollars that belong to Plaintiffs.

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and is between Plaintiffs who are citizens of Florida or Canada and Defendants, who are residents and citizens of California. *See* 26 U.S.C. § 1332.

2. This Court has personal jurisdiction over Defendants because they are residents and citizens of the state of California.

3. Venue is also proper in this judicial district because the Defendants reside in this district and the conduct at issue in this action took place, at least in part, in this district.

## II. THE PARTIES

4. Plaintiff 1250916 Ontario Ltd. is a Canadian company conducting business in Miami-Dade County, Florida, and whose members are citizens of Canada.

5. Plaintiff Belaire Group, LLC is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, and whose members are citizens of Canada.

6. Plaintiff 2807 Jade 1, LLC is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida, and whose members are citizens of Canada.

7. Kagan is a citizen and resident of the state of California.

8. Safaa is a citizen and resident of the state of California.

## III. FACTUAL BACKGROUND

9. Kagan is a Florida Bar licensed attorney who also acts as a real estate closing agent for his clients.

10. Safaa is married to Kagan.

11. Kagan was hired by Plaintiffs to act as their counsel in numerous transactions in which Plaintiffs' funds were loaned to borrowers for the purchase of real property. Specifically, Kagan was engaged by Plaintiffs as their attorney on approximately 18 loan transactions (the "Transactions") through which Plaintiffs lent millions of dollars to third parties for the purchase of real estate properties. Each transaction was to be secured by a first mortgage.

12. During the term of the loans and upon maturity, all payments (including interest payments and principal amounts) made by the borrowers under the loans had to be sent to Kagan, who was required to deposit those amounts in his trust account for the benefit of Plaintiffs and immediately thereafter remit to Plaintiffs the funds collected by Kagan on their behalf.

#73711749_v1

- 3 -
COMPLAINT

13. Until late 2019, Kagan was remitting monthly interest payments to Plaintiffs. Although the maturity dates had long expired for many of the loans, Kagan consistently represented to Plaintiffs that the loans had been extended and that the borrowers were continuing to pay monthly interest payments on the borrowed funds. For years, Kagan deceived Plaintiffs into believing that the loans that had matured had all been extended.

14. Instead of fully and lawfully performing his duties on behalf of Plaintiffs, Kagan, with the assistance of Safaa, among others, embezzled, stole, and converted Plaintiffs' funds for Defendants' personal use and benefit.

15. For example, Plaintiffs learned within the last few weeks that many of the borrowers paid the full amount due on the loans to Kagan at the time of maturity, but those amounts were never remitted to Plaintiffs. Instead, Kagan would *falsely* represent to Plaintiffs that the funds were still being held by the borrowers, who were *allegedly* paying interest to Plaintiffs through Kagan.

16. Kagan would use the "interest payments" he was remitting to Plaintiffs on a monthly basis to keep Plaintiffs in the dark and hide the fact that Kagan, Safaa and their other partners in crime were stealing and converting Plaintiffs' funds.

17. The Table attached as **Exhibit A** illustrates the following, among other things, for each loan transaction involving the use of Plaintiffs' funds: (1) name of the lender (one of the Plaintiffs), (2) name of the borrower, (3) property used as collateral, (4) amount loaned, (5) date of the loan, and (6) maturity date of the loan.

18. The Table attached as Exhibit A also illustrates the following: (7) the amounts that Plaintiffs have been made aware that Defendants have embezzled and converted, and (8) the amounts that Plaintiffs believe Defendants have tried, but have been unable, to embezzle and convert for their own personal use.

19. In any event, as of the date of this Complaint, Plaintiffs' damages amount to over $4.5 million dollars.

20. Kagan admitted to having received the repayment of borrowed funds from borrowers in many instances and having kept and not remitted those funds to Plaintiffs. *See, e.g.*, **Exhibit B** [March 6, 2020 E-mail from Kagan regarding Loan List].

21. When confronted in the recent weeks with many of the facts mentioned above, Kagan repeatedly promised to begin to transfer funds to Plaintiffs in an effort to start making Plaintiffs whole, but failed to do so.

22. In a recent act of desperation, Kagan *knowingly and intentionally* (i) fabricated one or more "bank documents" and (ii) issued one or more checks without sufficient funds in an effort to give Plaintiffs the false impression that he was taking steps to pay Plaintiffs the amounts that had been stolen from them. *See e.g.,* **Exhibits C** [Letter from Kagan to Salpeter Gitkin, LLP with fraudulent loan payoff check image] **and D** [Texts from Kagan with fraudulent wire information].

23. Defendants' conspiracy and unlawful activities not only violate state and federal civil and criminal laws, Kagan's unlawful activities also dishonor the practice

of law and the duties that attorneys in Florida (as well as attorneys in other jurisdictions) owe to their clients and our judicial system.

24. Defendants misappropriated Plaintiffs' funds in part to fund a portion of the purchase of their personal residence in California.

25. Defendants purchased their California residence for over two million dollars after several of the loans had matured and payments had been made to Kagan by the borrowers for the full amount due on those loans (which payments were never remitted to Plaintiffs). *See e.g.,* **Exhibit E** [Recorded Deed and First American Report for residence owned by Defendants].

26. Defendants also converted Plaintiffs' funds to purchase a property in Sunny Isles Beach, Florida, for Safakat, LLC (a company owned by Safaa and her sister).

27. Defendants entered into an unlawful scheme and agreement to intentionally withhold, use, misappropriate, divert, steal, embezzle, and convert funds that rightfully belong to Plaintiffs for Defendants' own personal use.

28. At all relevant times, Defendants acted with the specific intent to wrongfully deprive Plaintiffs of possession of funds that Plaintiffs hold all right, title, and ownership and to which they are entitled to immediate possession.

29. Defendants have at all times known that the funds do not belong to them and that Kagan was under a legal duty to segregate, hold in trust, and promptly remit Plaintiffs' funds to Plaintiffs.

30. Defendants have stolen millions from Plaintiffs and Plaintiffs have been damages as a result.

## IV. CLAIMS FOR RELIEF

## COUNT I – CONVERSION

**(against all Defendants)**

31. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiffs hold all rights, title and legal, equitable and/or beneficial interest in all monies collected by Defendants relating to the Transactions.

33. Through their past and continued interference with Plaintiffs' right to access and possess those funds, wrongful retention of those funds, and conversion and use of such funds for Defendants' personal use, Defendants have intentionally and wrongfully established dominion over and possession of monies owned by Plaintiffs, thereby depriving Plaintiffs of their property rights therein.

34. Plaintiffs are entitled to the immediate return of the funds wrongfully converted and to exclusive access and control of all funds related to the Transactions, as well as fair compensation for the time and money properly spent on their behalf in pursuit of the recovery of such funds.

35. As a proximate result of Defendants' actions, Plaintiffs have suffered—and are entitled to collect from Defendants—damages that are estimated to *exceed*

FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000), exclusive of interest and expenses.

36. Plaintiffs are informed and believe and thereon allege that in committing the acts alleged herein, Defendants are guilty of oppression, fraud or malice within the meaning of California Civil Code section 3294, and that they authorized, ratified or performed the wrongful acts detailed in this Complaint, entitling Plaintiffs to punitive or exemplary damages in an amount appropriate to punish Defendants and to make an example of them to the community.

## COUNT II – CIVIL THEFT

**(against all Defendants)**

37. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. Cal. Pen. Code section 496 makes it a crime to receive or withhold from the owner "property that has been . . . obtained in any manner constituting theft" and provides that any person injured by a violation of the statute may bring an action for treble damages.

39. Plaintiffs hold all rights, title and legal, equitable and/or beneficial interest in and to all monies collected relating to the Transactions.

40. Through the surreptitious transfer, theft, misappropriation, embezzlement and/or conversion of funds that belong to Plaintiffs, and concurrent hidden interference

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

with Plaintiffs' right to access those funds, Defendants have committed a theft of such funds, thereby depriving Plaintiffs of their property rights therein. This was without Plaintiffs' express or implied consent or knowledge.

41. By virtue of the thefts described above, Defendants are now in possession of, and are withholding, property belonging to Plaintiffs.

42. Plaintiffs are entitled to the immediate return of the funds stolen by Defendants, to which Plaintiffs' access has been fraudulently restricted, damages in the amount equal to three times the value of the stolen property, as well as fair compensation for time and money properly spent in pursuit of the recovery of such funds in amount to be proven at trial.

43. Further, Plaintiffs are informed and believe and thereon allege that in committing the acts alleged herein, Defendants are guilty of oppression, fraud or malice within the meaning of California Civil Code section 3294, and that they authorized, ratified or performed the wrongful acts detailed in this Complaint, entitling Plaintiffs to punitive or exemplary damages in an amount appropriate to punish Defendants and to make an example of them to the community.

44. As a proximate result of Defendants' actions, Plaintiffs have suffered—and are entitled to collect from Defendant—damages that are estimated to exceed FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000), exclusive of interest and expenses.

## COUNT III – BREACH OF CONTRACT

### (against Defendant Kagan)

45. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. Kagan was hired by Plaintiffs to act as their counsel and agent in numerous transactions in which Plaintiffs' funds were loaned to borrowers for the purchase of real property. Through the Transactions, for example, Plaintiffs would lend to third parties millions of dollars for the purchase of real estate properties.

47. At maturity of the loans, many of the borrowers repaid the principal amount due on the loans by transmitting funds to Kagan with the understanding that such funds would be remitted to the rightful owners of the funds, Plaintiffs.

48. Kagan refused to forward those funds to Plaintiffs. Instead, Kagan, together with his co-conspirators and partners in crime (including Safaa), stole millions from Plaintiffs.

49. In other words, instead of fully and lawfully performing his duties on behalf of Plaintiffs, Kagan embezzled, stole, and converted Plaintiffs' funds for Defendants' personal use and benefit.

50. In doing so, Kagan breached his contractual obligations to Plaintiffs.

51. As a proximate result of Kagan's breaches, Plaintiffs have suffered—and are entitled to collect from Kagan—damages that are estimated to exceed FOUR

MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000), exclusive of interest and expenses.

## COUNT IV – BREACH OF FIDUCIARY DUTY

### (against Defendant Kagan)

52. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53. Kagan invited the utmost trust and confidence of the Plaintiffs, and Plaintiffs reposed the utmost trust and confidence in Kagan based upon Kagan's professional status as an attorney.

54. Kagan breached his fiduciary duty to Plaintiffs by, among other things, misappropriating and converting Plaintiffs' funds for his own personal use and for use by Safaa, among others.

55. As a proximate result of Kagan's breaches, Plaintiffs have suffered—and are entitled to collect from Kagan—damages that are estimated to exceed FOUR MILLION FIVE HUNDRED THOUSAND DOLLARS ($4,500,000), exclusive of interest and expenses.

## V. JURY DEMAND

56. Plaintiffs demands a jury trial.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs 1250916 Ontario Ltd., Belaire Group, LLC, and 2807 Jade 1, LLC pray for the following relief:

1. Judgment against Defendants Kagan and Safaa for all damages suffered and/or incurred by Plaintiffs arising from Defendant's conduct in an amount no less than 4.5 million dollars in damages and to include prejudgment interest and attorneys' fees and costs incurred by Plaintiffs;

2. Punitive and exemplary damages in an amount appropriate to punish Defendants and to make an example of Defendants to the community;

3. Equitable relief as deemed appropriate by the Court;

4. For other relief as the Court and/or the Jury deems just and proper.

Dated:       March 20, 2020

/s/Robert Barton
HOLLAND & KNIGHT LLP
ROBERT BARTON
JESUS CUZA *(PRO HAC VICE MOTION FORTHCOMING)*
REBECCA CANAMERO *(PRO HAC VICE MOTION FORTHCOMING)*
JOHN A. CANALE

Attorneys for Plaintiffs 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, and 2807 JADE 1, LLC